**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 19-21009 (JJT) |
| | ) | | |
| DAVID RONCARI, | ) | | |
| DEBTOR. | ) | CHAPTER | 7 |
| | ) | | |
| JOHN J. O'NEIL, JR., TRUSTEE, | ) | | |
| PLAINTIFF | ) | ADV. PROC. No. | 20-02001 (JJT) |
| V. | ) | | |
| | ) | | |
| PROTECTIVE LIFE | ) | | |
| INSURANCE COMPANY; | ) | RE: ECF Nos. | 1, 3, 17, 23, 24[1] |
| DAVID RONCARI; AND | ) | BR-ECF Nos. | 10, 15, 59 |
| GILDA RONCARI, | ) | | |
| DEFENDANTS | ) | | |
| | ) | | |

**POST-TRIAL MEMORANDUM OF DECISION**

I.    INTRODUCTION

The Chapter 7 Trustee ("Trustee") brought this Adversary Proceeding seeking a ruling from

the Court that the Debtor's claimed exemption in the cash surrender value of a life insurance

policy (the "Policy") was improper. In the interest of efficiency and fairness to all parties, the

Court consolidated the trial on the merits of the Adversary Proceeding with the hearing on the

merits of two additional, interrelated motions. *See* Pre-Trial Order, ECF No. 10. Specifically, the

matters before the Court include: (1) the Trustee's Amended Complaint (ECF No. 24, the

"Complaint"); (2) the Trustee's Motion for Preliminary Injunction (ECF No. 3, the "Motion");

---

[1] Citations to the docket of this Adversary Proceeding are noted by "ECF No." Citations to the docket in Case No. 19–21009 are noted by "BR-ECF No."

and (3) the Trustee's Objection to Debtor's Claim of Exemptions in the main bankruptcy case[2] (Case No. 19-21009, BR-ECF No. 10, the "Objection").

The Trustee's original Complaint named as defendants Protective Life Insurance Company ("Protective"), David Roncari (the "Debtor"), and Gilda Roncari ("Gilda," or collectively with the Debtor, the "Defendants"), and, pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure, sought to enjoin Protective from using the cash surrender value of the Policy, in addition to seeking that Protective refund any amount already used (ECF No. 1). The Trustee and the Debtor subsequently filed a Stipulation of Dismissal as to Protective only, leaving the Adversary Proceeding pending against the Defendants (ECF Nos. 20, 32). Thereafter, so as to properly frame the issues before the Court, the Trustee filed an Amended Motion to Amend Complaint, wherein he seeks a declaratory judgment that the Defendants are not entitled to exempt the cash surrender value of the Policy under Conn. Gen. Stat. § 38a-453, as well as a determination as to the party responsible for the post-filing payments of the Policy's premiums (ECF No. 23, the "Amended Motion"). The Court granted the Amended Motion and bifurcated the Trial on the additional issues raised in the Amended Complaint, reserving for possible further proceedings the issue as to the allocation of the post-filing premium payments and directing the Defendants to file any responsive papers after the Trial (ECF No. 36).

Similar to the relief requested in the Trustee's original Complaint, the Trustee's Motion seeks the entry of a preliminary injunction preventing the invasion of the cash surrender value of the Policy to pay premiums (ECF No. 3). In support thereof, the Trustee argues that, in addition to suffering irreparable harm absent an injunction, he is likely to prevail on the merits of the Objection in the Debtor's main bankruptcy case, and that there are serious questions going to the

---

[2] *See In re David Roncari*, Case No. 19–21009 (Bankr. D. Conn.).

merits of the claimed exemption and the Objection, including: (1) whether the Debtor may claim

an exemption pursuant to Conn. Gen. Stat. § 38a-453 when he has already elected federal

exemptions pursuant to 11 U.S.C. § 522(b)(2); (2) whether *Pearl v. Goldberg*, 300 F.2d 610 (2d

Cir. 1962), was wrongly decided; (3) whether the 1993 enactment of Conn. Gen. Stat. § 52-

352b(s) abrogated the holding of *Pearl v. Goldberg*; and (4) whether this Court's ruling in *In re*

*Wiggs*, 2019 WL 6002199, Case No. 18-21473, is applicable to the facts and circumstances of

this case (ECF No. 3, p. 5).

In the main bankruptcy case, the Trustee's Objection attempts to disallow the Debtor's

exemption of $66,290.21 in the cash surrender value of the Policy, which was claimed pursuant

to Conn. Gen. Stat. §§ 38a-453 and 38a-454 (BR-ECF No. 10). In response to the Trustee's

Objection, the Debtor raised similar defenses as to those made in the Defendants' Answer,

namely that under settled law in this Circuit, the cash surrender value of a life insurance policy

owned by the debtor was beyond the reach of the bankruptcy trustee and protected in favor of the

beneficiary by way of Connecticut General Statutes § 38a-453 (BR-ECF No. 15).

A consolidated trial (the "Trial") on the matters presently before the Court was held on

February 27, 2020. At the conclusion of the Trial, the Court took the matters under advisement.

For the reasons set forth below, the relief sought in the Complaint is hereby DENIED and

judgment is entered in favor of the Defendants, the Trustee's Objection and Limited Objection

are hereby OVERRULED, and the Trustee's Motion for Preliminary Injunction is hereby

DENIED.

II.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the

instant proceedings pursuant to 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its

authority to hear and determine this matter on reference from the District Court pursuant to 28

U.S.C. §§ 157(a) and (b)(1) and the General Order of Reference of the United States District

Court for the District of Connecticut dated September 21, 1984.  This Adversary Proceeding

constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

III.    FACTS[3]

1.  On June 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief

    under Chapter 7 of the Bankruptcy Code, at which point, Anthony Novak, Esq.

    ("Novak") was appointed as the Chapter 7 Trustee.

2.  As of the Petition Date, the Debtor was the insured and owner of a Flexible Premium

    Adjustable Life Insurance policy (the "Policy") that was issued by Protective on February

    12, 1988. The Debtor's wife, Gilda Roncari, is listed as the sole beneficiary under the

    Policy.

3.  The Policy provides that the Debtor, as owner of the Policy, has the unqualified right to

    assign the Policy, and that the rights of the beneficiary are subject to assignment. The

    Policy further permits the Debtor to change the beneficiary at any time while the Policy is

    in force.

4.  Pursuant to the Policy, the Debtor is entitled to withdraw the net cash surrender value of

    the Policy. In the event the Debtor fails to pay the premiums on the Policy, Protective

    withdraws from the cash surrender value the amounts necessary to cover the premiums.

5.  On the Petition Date, the cash surrender value was $75,004.90.

6.  On his Schedule A/B, the Debtor listed the Policy as an asset.

---

[3] The facts in this case are straightforward and not in dispute, and are established by the parties' Stipulation of Facts filed in the above-captioned case and the corresponding adversary proceeding, the testimony and the exhibits admitted at the Trial, in addition to matters of record.

7.  On Schedule C, the Debtor elected the federal exemptions and claimed the Policy as exempt in the amount of: (1) $12,625.00 under 11 U.S.C. § 522(d)(8); (2) $12,735.70 under 11 U.S.C. § 522(d)(5); and (3) $66,290.21 under Conn. Gen. Stat. §§ 38a-453 and 38a-454.

8.  On August 13, 2019, the Trustee filed a timely objection to any exemption in the cash surrender value claimed by the Debtor under Connecticut state exemption laws based on the Debtor's election of federal exemptions. No objection was raised as to the Debtor's election of the federal exemptions.

9.  On September 11, 2019, the Debtor filed a Reply to the Trustee's Objection, asserting that, pursuant to § 38a-453 and well-settled law in the Second Circuit, the Trustee is not entitled to the cash surrender value of the Policy.

10. On October 24, 2019, Novak resigned and John J. O'Neil, Jr. (the "Plaintiff" or "Trustee") was appointed as successor trustee.

11. On January 22, 2020, the Trustee filed this Adversary Proceeding, naming Protective, the Debtor, and Gilda as defendants, and therein sought injunctive relief. The Trustee's Motion seeking a preliminary injunction was also filed on this date.

12. On January 24, 2020, the Court held an expedited hearing on the Trustee's Motion. Thereafter, the Court entered a Pre-Trial Order consolidating the trial on the merits of the Adversary Proceeding with the hearing on the merits of the Trustee's Motion and the Objection. The Pre-Trial Order further directed that any amendments to the Debtor's claimed exemptions be filed within 10 days.

13. Pursuant to the Court's aforementioned Order, on January 30, 2020, the Debtor amended his Schedules, listing the Policy's cash surrender value as $73,644.00 and claiming an

exemption in the cash surrender value as follows: $13,400.00 pursuant to 11 U.S.C.

§ 522(d)(8), $13,535.70 pursuant to 11 U.S.C. §522(d)(5), and exempting his interest in

the Policy pursuant to 11 U.S.C. § 522(d)(7).

14. The Trustee filed a Limited Objection to the Debtor's use of section 522(d)(7) to claim an

exemption in his ownership interest of the Policy to the extent that the Debtor's selection

of section 522(d)(7) can be read to claim an exemption in the cash surrender value of the

Policy.

15. On February 3, 2020, the Defendants filed their Answer, wherein the Debtor claimed the

same exemptions listed on his amended Schedules pursuant to §§ 522(d)(5), (d)(7), and

(d)(8). The Debtor also indicated that the balance of the cash surrender value of the

Policy constituted exempt property by reason of Conn. Gen. Stat. § 38a-453.

16. Also included in the Answer, was an exemption asserted by the Defendant, Gilda

Roncari, in the cash surrender value of the Policy and any death proceeds thereafter

becoming payable pursuant to Conn. Gen. Stat. § 38a-453.

IV.    DISCUSSION

At the Trial, the Trustee advanced ten arguments in support of his position that the

Defendants' claimed exemption is improper: (1) the Debtor may not claim state exemptions in

his Answer when he has elected federal exemptions on his Schedules; (2) as beneficiary of the

Policy, Gilda is in privity with the Debtor, and therefore is judicially estopped by the Debtor's

election of federal exemptions from making a claim on her own behalf for a state law exemption;

(3) because the Debtor is able to change the beneficiary of the Policy at any time, Gilda has no

rights in the Policy and no right to claim an exemption from the Debtor's creditors; (4) the

Trustee has the right to withdraw the cash surrender value, net of the Debtor's properly claimed

federal exemptions; (5) Conn. Gen. Stat. § 38a-453 does not provide the Defendants with an exemption in the cash surrender value of the Policy as against the Debtor's creditors or the Trustee; (6) the controlling case law is distinguishable; (7) the state's enactment of Conn. Gen. Stat. § 52-352b(s) demonstrates the Legislature's disagreement with the controlling case law; (8) this Court's ruling in *In re Wiggs* controls the present case; (9) the Debtor may not exempt the cash surrender value of the Policy under 11 U.S.C. § 522(d)(7); and (10) the Trustee is entitled to the cash surrender value as of the Petition Date, minus the Debtor's properly claimed exemptions.

Section 522(b)(1) of the Bankruptcy Code provides that a debtor may elect to exempt certain property under either the federal exemptions provided in § 522(d) or under state law and federal nonbankruptcy law. 11 U.S.C. § 522(b)(1). Because Connecticut has not opted out of the federal exemptions, a debtor is permitted to claim as exempt either that property which is exempt under 11 U.S.C. § 522(d), or that property which is exempt under state law, however, the debtor is prohibited from claiming *both* federal and state exemptions. *See John T. Mather Memorial Hosp. of Port Jefferson, Inc. v. Pearl*, 723 F.2d 193, 194 (2d Cir. 1983). The Trustee contends that the Debtor is impermissibly mixing exemptions by electing the federal exemptions on his Schedules and asserting an exemption in his wife's favor pursuant to a Connecticut statute in his Answer. In response, the Debtor argues that he has not elected Conn. Gen. Stat. § 38a-453 as an exemption, but rather he has identified the statute "as an independent basis for protecting the cash surrender value in his life insurance for the benefit of Mrs. Roncari" and "put the world on notice that Connecticut offers this statutory safeguard to the beneficiary of a life insurance policy." Post-Trial Memorandum of the Defendants, ECF No. 43, p. 2.

Connecticut General Statutes § 38a-453 is captioned "Rights of creditors of insured against beneficiary" and provides that:

(a) The beneficiary of any life insurance policy, being a person other than the insured, whether named as beneficiary in the original policy or subsequently named as beneficiary in accordance with the terms of the policy, shall be entitled to the proceeds of the policy as against the representatives or creditors of the insured, unless the policy was procured or the designation of a beneficiary was made with intent, express or implied, to defraud creditors.

Conn. Gen. Stat. § 38a-453(a).

The Trustee would have this Court read the statute so as to provide no protection to the cash surrender value from the claims of the insured's creditors. Specifically, the Trustee argues that because Conn. Gen. Stat. § 38a-453 does not mention the term "cash surrender value," its protection is therefore limited to the proceeds, *i.e.* the death benefit, of a life insurance policy, and that "the statute deals only with the circumstances under which the creditors of an insured may reach the death benefits of a life insurance policy." Plaintiff's Trial Brief, ECF No. 31 p. 21. This argument, however, is not supported by the controlling case law in the Second Circuit. In *Pearl v. Goldberg*, the trustee-appellant raised this same argument, contending that Conn. Gen. Stat. § 38-161[4] (now codified at § 38a-453) applied "only to payments to the beneficiary made after the death of the insured, not to the cash surrender value of a policy when the insured is still living." *Pearl v. Goldberg*, *supra*, 300 F.2d at 612. After an examination of the statutory background, the Court found the trustee's argument unpersuasive, and held that § 38-161 exempted the cash surrender value of the life insurance policy from the claims of the insured's

---

[4] The language of Conn. Gen. Stat. § 38-161 and Conn. Gen. Stat. § 38a-453 is identical.

trustee when the insured is still living, stating that "[t]here is no magic in the word 'proceeds' which would limit it to amounts payable after the insured's death." *Id.* at 613; *see also Klebanoff v. Mutual Life Ins. Co. of N.Y.*, 246 F. Supp. 935, 942 (D. Conn. 1965). Just as the Second Circuit found nearly 60 years ago, this Court now too finds the Trustee's argument to be unpersuasive.

Rather, this Court finds that the plain language of section 38a-453 evidences the legislative intent to explicitly protect the beneficiary of a life insurance policy against a representative or creditor of the insured by restricting the rights of creditors to reach the proceeds of an insurance policy payable to a beneficiary other than the insured. By its terms, the statute treats this property as sacrosanct for the benefit of the beneficiaries and insulates policy proceeds under all circumstances short of fraud. This interpretation is further supported by long-standing precedent in the Second Circuit.

In *Pearl v. Goldberg,* the trustee appealed the District Court's order reversing the decision of the bankruptcy referee requiring the debtor to transfer his interest in his life insurance policy, which included its cash surrender value, to the trustee. After conducting a thorough analysis of the statute's legislative history, the Second Circuit affirmed the District Court, which held that the cash surrender value of the debtor's life insurance policy was exempt property under Conn. Gen. Stat. § 38-161 and thus beyond the reach of the trustee, reasoning that the language of the statute was unequivocal in that a beneficiary is entitled to the proceeds of a life insurance policy as against creditors of the insured, and that the purpose of the statute "was to extend to all beneficiaries the protection which [the prior statute] had granted to wives [of the insured]." *Pearl*, *supra*, 300 F.2d at 613.

9

Shortly thereafter, the District Court of Connecticut was faced with a similar issue in

*Klebanoff v. Mutual Life Ins. Co. of N.Y.* when the beneficiary of various life insurance policies

brought a Motion for Partial Summary Judgment, seeking a declaration that she, as the named

beneficiary under the policies, was entitled to the insurance proceeds following the death of the

insured husband. *Klebanoff*, *supra*, 246 F. Supp. at 940. One question that the District Court

determined, and that is relevant to this Court's analysis, was which of the adverse claimants[5] was

entitled to the insurance proceeds: the beneficiary, the trustee of the deceased-insured's

bankruptcy estate, the trustee of the beneficiary's estate, or a creditor with a judicial lien against

the beneficiary and insured. *Id.* The trustee conceded that § 38-161 protected beneficiaries from

the claims of an insured's creditors but argued "that the statute affords no protection to the

insured debtor from the claims of his own creditors directly against the interest which the insured

has in his policies." *Id.* at 942. Rejecting this argument and stating that such a narrow

construction of the statute would "give beneficiaries of insured debtors no protection at all," the

court, *Timbers, J.*, held that the trustee of the insured was not entitled to the proceeds *as against*

*the beneficiary*, based on the Second Circuit's ruling in *Pearl v. Goldberg* and the determination

that § 38-161 protects the cash surrender value of a policy from the claims of the insured's

trustee. *Id.*

More recently, this Court had the opportunity to examine this same issue in *In re Wiggs,* 610

B.R. 57 (Bankr. D. Conn. 2019). *Wiggs* involved the trustee's objection to the debtor's claim of

exemption in the cash surrender value of a life insurance policy pursuant to Conn. Gen. Stat.

§ 38a-453. Notably, the debtor in *Wiggs* claimed the exemption *in his own favor* after liquidating

the cash surrender value of his policy and using a portion of it for his own benefit. In the absence

---

[5] While there were only three adverse claimants, four adverse claims were asserted based on the trustee's role in the bankruptcies of both the deceased-insured and the beneficiary.

of any claim from or in favor of the beneficiaries under the debtor's policy, or any evidence that

the monies were garnered by the debtor for the benefit of the beneficiaries, this Court sustained

the trustee's objection. Here, the Trustee's insistence that *Wiggs* controls the present case is

misplaced. The Court's Ruling in *Wiggs* was based on the distinctive facts present there—

specifically, the absence of any claim by or in favor of the beneficiary in the cash surrender value

of the policy and the debtor's election of the exemption *in his own favor*. Critically, in the

present case, the beneficiary is properly before the Court and is asserting a claim that she is

entitled to the cash surrender value over the Trustee pursuant to the protections provided under

§ 38a-453. While the Court's Ruling in *Wiggs* was determined on a very particular set of facts,

the Court's decision does not negate the holdings in *Pearl* and *Klebanoff*, and, thus, the

proposition that § 38a-453 protects the beneficiary of a life insurance policy as against the

insured's creditors still stands.

     In reliance on this misreading of *Wiggs*, the Trustee urges this Court not to follow the

holdings of *Pearl* and *Klebanoff*, arguing that these cases arose under entirely different state and

federal exemption schemes than the ones that exist today.[6] Going even further, the Trustee

argues that the holdings of these two cases must yield in light of the enactment of additional state

and federal exemptions. While the factual circumstances in the present case differ from those

presented in *Pearl*, *Klebanoff*, and *Wiggs*, the issue squarely before this Court is whether the cash

surrender value of the Policy is protected in favor of the beneficiary, Gilda Roncari. This very

issue was previously adjudicated by the *Pearl* and *Klebanoff* courts, and was resolved in the

affirmative, thus binding this Court today.

---

[6] The Trustee specifically discusses the enactment of Conn. Gen. Stat. § 52-352b(s), discussed *infra*, and the protections afforded thereunder.

The Trustee further argues that if this Court adopts the interpretation of § 38a-453 as construed by *Pearl*, *Klebanoff*, and *Wiggs,* whereby the cash surrender value of the Policy is protected in favor of the beneficiary, such an interpretation would nonetheless render the exemption found at Conn. Gen. Stat. § 52-352b(s) superfluous. The Court finds this contention to be without merit.

The Connecticut state exemptions,[7] specifically, section 52-352b(s), exempts "any interest of the exemptioner not to exceed in value four thousand dollars in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the exemptioner under which the insured is the exemptioner or an individual of whom the exemptioner is a dependent." In light of the enactment of § 52-352b(s), the Trustee contends that the interpretation of § 38a-453 advanced by this Court and by other courts in this Circuit "would create an inconsistent, unreasonable, absurd, bizarre, incoherent body of Connecticut law on the exemption of the cash surrender value of a life insurance policy." Plaintiff's Trial Brief, ECF No. 31 pp. 20-21. Further, the Trustee advances the notion that "[t]he only possible explanation for the enactment of Conn. Gen. Stat. § 52-352b(s) is that the General Assembly sought to establish an exemption for cash surrender value where none had existed before, to place a $4,000.00 limit on the exemption, and to register its disagreement with *Pearl* and *Klebanoff.*" *Id.* at 24. In response, the Defendants argue that the two statutes are different and distinct. This Court agrees with the Defendants, finding no conflict between the two statutes.

Section 38a-453 explicitly and unequivocally protects the beneficiary of a life insurance policy *other than the insured* as against creditors of the insured. Alternatively, section 52-

---

[7] Conn. Gen. Stat. § 52-352a(c) defines "exempt" property as property that is "not subject to any form of process or court order for the purpose of debt collection." Further, "exemptioner" is defined as "the natural person entitled to an exemption under this section or section 52-352b." Conn. Gen. Stat. § 52-352a(d).

352b(s) provides the *insured*, whether named a beneficiary or not, an option to exempt and

protect a portion of the cash surrender value of an unmatured life insurance policy. What's more,

section 52-352b(s) limits the insured's exemption to any *unmatured* life insurance contract,

whereas the protection afforded under section 38a-453 extends to the beneficiary of *any* life

insurance policy, insulating both the cash surrender value of an unmatured policy while the

insured is still alive and the proceeds of a matured life insurance contract. Accordingly, the Court

here finds, based on a plain reading of § 38a-453 and the controlling law in this Circuit, that the

cash surrender value of the Policy is protected in favor of Gilda, and thus beyond the reach of the

Trustee.

Finding that Gilda, as named beneficiary under the Policy, is entitled to the protections

provided under section 38a-453, the Court now turns to the Trustee's remaining arguments

regarding Gilda's ability to assert such protections. Specifically, the Trustee argues that based on

Gilda's status as beneficiary under the Policy, she is: (1) in privity with the Debtor and therefore

judicially estopped by the Debtor's claim of federal exemptions from making a claim on her own

behalf under the state statute; and (2) she has no rights in the Policy and no right to claim an

exemption in the Policy because the Debtor can change her beneficiary status an any time. Both

arguments are unavailing.

The Trustee contends that this case can be decided upon a finding that, as beneficiary, Gilda

is in privity with the Debtor and therefore judicially estopped from adopting a position contrary

to the position of the Debtor. In support of this contention, the Trustee cites to cases outside of

the bankruptcy context that stand for the general proposition that privity exists as between the

insured and the beneficiary. And while most states do appear to treat the interests of an insured

13

and a beneficiary to be in privity, the cases cited are inapposite and this general rule has no

bearing on the issue currently before the Court.

For instance, the Trustee cites to: *Fleet Messenger Service, Inc. v. Life Ins. Co. of North America*, 205 F.Supp. 585 (S.D.N.Y. 1965), wherein the issue of privity between an insured and a beneficiary was discussed in the context of a beneficiary invoking a physician-patient privilege to exclude certain testimony by a physician of the deceased-insured under New York law; *LeMay v. Dudenbostel*, 1992 WL 74584 (Tenn. App. April 15, 1992), wherein the sole beneficiary under the insured-deceased's life insurance policy was found to be in privity with the insured-deceased and thus bound by the deceased's divorce decree and contempt order requiring the deceased to maintain the life insurance policy for the benefit of his child; *Ballard v. Ballard*, 296 S.W. 2d 811 (Tex. Civ. App. 1956), discussing the admissibility of declarations by an insured based on a theory of privity of title between the insured and beneficiary; and *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC,* 692 F.3d 983 (9th Cir. 2012), finding that privity lies between the administrator of an estate and the beneficiaries of that estate, thus precluding the beneficiary of the estate from taking a position inconsistent with the arguments the estate had advanced in judicial and non-judicial settings for over forty years. While Gilda may be a privy of the Debtor based on her status as beneficiary under the Policy, none of the cases cited by the Trustee bears any impact on Gilda's ability to benefit from state protections after the Debtor-insured has elected federal exemptions. What's more, should Gilda commence a separate bankruptcy case in the future–one not jointly administered with the Debtor's–any such privity would not foreclose Gilda from electing state exemptions. Accordingly, the Court declines to foreclose Gilda from asserting Conn. Gen. Stat. § 38a-453 as a means of protecting her interest in the cash surrender value of the Policy in this case.

Related to his privity argument, the Trustee claims that the Defendants are also judicially estopped from claiming an exemption pursuant to Conn. Gen. Stat. § 38a-453 based on Gilda's privity with the Debtor-insured and the Debtor's election of federal exemptions on Schedule C. Courts, however, have the discretion to adopt the equitable doctrine of judicial estoppel when it is required "to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 71 (2d Cir. 1997) (citing to *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1038 (2d Cir. 1983)). The doctrine of judicial estoppel precludes parties from asserting claims that are inconsistent with those made in prior court proceedings, and typically will apply when: (1) a party's later position is clearly inconsistent with its earlier position; (2) the party's former position has been adopted in some way by the court in the earlier proceedings; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel. *See DeRosa v. National Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010).

Because the underlying basis for the Trustee's position that Gilda is judicially estopped from claiming an exemption pursuant to section 38a-453 has been rejected by this Court, the Court also finds that the privity between Gilda and the Debtor has no bearing on her ability to protect her interest in the cash surrender value of the Policy pursuant to section 38a-453. As to the Debtor, the Trustee contends that all three elements of judicial estoppel are present in this case: the Debtor's identification of Conn. Gen. Stat. § 38a-453 in his Answer is inconsistent with his prior position of electing the federal exemptions in Schedule C; the Debtor's election of federal exemptions was successful; and the Debtor would obtain an unfair advantage and impose an unfair detriment on the Trustee by taking advantage of federal exemptions on Schedule C while taking advantage of state law exemptions in the adversary proceeding.

15

Applying the doctrine of judicial estoppel to the case at hand, the Court is persuaded that there is no clear inconsistency between the Debtor's present and former positions. Contrary to the Trustee's contention that the Debtor is impermissibly mixing federal and state exemptions, the Debtor here readily concedes that he is not claiming an exemption in the cash surrender value, but merely identified the statute in his Answer to "put the world on notice that Connecticut offers this statutory safeguard to the beneficiary of a life insurance policy." Post-Trial Memorandum of the Defendants, ECF No. 43 p. 2. The Debtor has not claimed a state law exemption on his amended Schedules, and he has not claimed a state law exemption in his Answer. Rather, Gilda, a non-debtor defendant that the Trustee chose to bring before this Court, is the one asserting the exemption in her favor. This is consistent with what the Debtor has maintained since the inception of this case, namely, that the trustee of an insured "has no right to any portion of the cash surrender value, as the intention of [Conn. Gen. Stat. § 38a-453] was to vest those rights in the beneficiary." Debtor's Objection to Trustee's Objection to Debtor's Claim of Exemption, BR-ECF No. 15 at p. 2. Because the Court finds that that the Debtor's prior assertions of claiming federal exemptions on his amended Schedules are not clearly inconsistent with his personal assertions in his Answer, the Court, therefore, declines to apply the doctrine of judicial estoppel. *See Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997) ("When any of these elements are missing, judicial estoppel does not apply.").

Lastly, the Trustee argues that Gilda cannot avail herself of the protections of Conn. Gen. Stat. § 38a-453 because the Debtor is free to change her status as a beneficiary at any time, thereby affording Gilda no rights in the Policy. The Trustee relies on case law from other jurisdictions that stand for the proposition that "[w]here an insured retains the right to change the beneficiary of a life insurance policy, the beneficiary has no rights, or at most only inchoate

rights, in the policy while the insured is alive."[8] Plaintiff's Trial Brief, ECF No. 31 p. 11.

However, in Connecticut, "regardless of whether the insured reserved the right to change the

beneficiary, the named beneficiary under a life insurance policy has a vested interest in the

insurance." *Klebanoff*, *supra*, 246 F.Supp. at 944. "Connecticut recognizes the interest of a

beneficiary of a life insurance policy as being vested though subject to defeasance by the owner

where the latter retains his right to change the named beneficiary. . . ." *U.S. v. McWilliams*, 234

F.Supp. 117, 120 (D. Conn. 1964); *see also Allen v. Home Nat'l Bank*, 120 Conn. 306, 180 A.

498, 500–01 (1935) ("The beneficiary's interest is regarded, in this state . . . as more than a mere

expectancy. . . . 'So long as the power of defeasance is not exercised, [beneficiaries] stand in the

position of one having a title which the law will recognize, and for the protection of which they

are entitled to the usual legal and equitable remedies.'" [internal citations omitted]).

Accordingly, because the Debtor has not exercised his right to divest Gilda of her status as a

beneficiary, Gilda has a vested interest in the cash surrender value and other proceeds of the

Policy, and may choose to protect that interest by asserting an exemption pursuant to Conn. Gen.

Stat. § 38a-453.

The Amended Complaint also raises the issue as to whether the exempt portion of the cash

surrender value is chargeable for post-petition withdrawals taken from the cash surrender value

to pay the Policy's premiums. Because the Court finds that the Trustee is not entitled to the cash

surrender value of the Policy pursuant to the protection provided in favor of Gilda by way of

Conn. Gen. Stat. § 38a-453, it need not reach this issue. Based on this same determination—that

---

[8] In support of this proposition, the Trustee cites to *In re Monahan*, 171 B.R. 710, 717 (Bankr. D.N.H. 1994) and *In re Sims*, 421 B.R. 745, 748 (Bankr. D. S.C. 2010) (*citing Swygert v. Durham Life Ins. Co.*, 229 S.C. 199, 203 (1956)).

the cash surrender value is beyond the reach of the Trustee—the relief sought in the Trustee's

Motion for Preliminary Injunction and any further injunctive relief is denied.

BASED ON THE FOREGOING, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1. The Debtor's identification of Conn. Gen. Stat. § 38a-453 in his Answer as a basis for protecting the cash surrender value of the Policy in favor of Gilda Roncari, while simultaneously electing federal exemptions is not the impermissible mixing of federal and state exemptions as alleged by the Trustee.

2. Conn. Gen. Stat. § 38a-453 explicitly protects the cash surrender value of the Policy in favor of Gilda Roncari as the named beneficiary under the Policy against any claim from the Trustee.

3. Gilda, as the beneficiary and a defendant before this Court, is entitled to exempt the cash surrender value and any death proceeds of the Policy thereafter becoming payable pursuant to Conn. Gen. Stat. § 38a-453.

4. The Trustee is not entitled to recover any portion of the cash surrender value of the Policy.

5. Any further relief sought in the Amended Complaint is DENIED and judgment shall enter in favor of the Defendants thereon.

6. The Trustee's Motion for Preliminary Injunction and any further injunctive relief is hereby DENIED.

7. The Trustee's Objection to Debtor's Claim of Exemptions is hereby OVERRULED.

8. The Debtor's exemption in the Policy itself under 11 U.S.C. § 522(d)(7) is proper, as the Debtor has made no claim of exemption in the cash surrender value of the Policy

pursuant to section 522(d)(7). Accordingly, the Trustee's Limited Objection is hereby also OVERRULED.

**IT IS SO ORDERED** at Hartford, Connecticut this 24th day of June 2020.

James J. Tancredi
United States Bankruptcy Judge
District of Connecticut